**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TIMOTHY CARR, on behalf of himself and others similarly situated,** | ) ) ) | Case No. 2:20-cv-6292 |
| Plaintiff, | ) ) | Judge Edmund A. Sargus, Jr. |
| v. | ) ) ) | Magistrate Judge Kimberly A. Jolson |
| | ) | **JOINT MOTION FOR PRELIMINARY** |
| **GUARDIAN HEALTHCARE HOLDINGS, INC.,** | ) ) ) | **APPROVAL OF CLASS ACTION SETTLEMENT** |
| Defendant. | ) ) | |

I.      **INTRODUCTION**

Plaintiff Timothy Carr ("Representative Plaintiff"), on behalf of himself and the members of proposed settlement class ("Class Members"), and Guardian Healthcare Holdings, Inc. ("Defendant"), respectfully move this Court to preliminarily approve the Class Action Settlement Agreement ("Agreement" or "Settlement") between Representative Plaintiff and Defendant pursuant to Fed. R. Civ. P. 23(e).

In support of this Motion, Representative Plaintiff and Defendant submit the following exhibits:

**Exhibit 1:**      Class Action Settlement Agreement and Release and exhibits.

**Exhibit 2:**      Declarations of Shannon Draher and Matthew Coffman.

**Exhibit 3:**      Notice of Class Action Settlement

**Exhibit 4**:      Proposed Preliminary Order Approving Class Action Settlement Agreement.

Representative Plaintiff and Defendant respectfully request that the Court enter the Proposed Preliminary Order Approving Class Action Settlement Agreement attached as **Exhibit 3** and:

- Certify the following class under Rule 23: "Occupational therapists, physical therapists, speech therapists and registered nurses who worked for Defendant in Ohio and were paid, in part, on a per-visit basis during the period of February 4, 2018 to June 4, 2021 (the "Class Members")";

- Preliminarily approve the Settlement pursuant to Fed. R. Civ. P. 23;

- Designate Representative Plaintiff as the Class Representative;

- Preliminarily approve the service payments to Representative Plaintiff and Opt-In Plaintiff Kimberly Payne;

- Designate Shannon M. Draher of Nilges Draher LLC and Matthew J.P. Coffman of Coffman Legal, LLC as Class Counsel;

- Preliminarily approve Class Counsel's request for attorneys' fees and litigation expenses; and

- Schedule a Fairness Hearing approximately [120 days] after preliminary approval.

## II. FACTS

### A. Summary of the Claims, Defenses and Procedural History.

On December 8, 2020, Representative Plaintiff filed this class and collective action lawsuit (the "Action") under the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFSWA"). (Doc. No. 1). Representative Plaintiff filed an Amended Complaint on March 8, 2021. (Doc. No. 17). In the Action, Representative Plaintiff seeks to represent the following individuals: "All current and former Ohio occupational therapists (OTs"), physical therapists (PTs"), speech therapists ("STs"), and registered nurses ("RNs") who were employed by Defendant in Ohio and were paid, in part, on a per-visit basis during the three (3) years

2

preceding the filing of the initial Complaint and continuing through the disposition of this case (the "Class Members") (Doc. 17).[1]

In the Action, Representative Plaintiff alleges that Defendant misclassified him and the Class Members as exempt from overtime compensation under the learned professional exemption. Specifically, Representative Plaintiff alleges that Defendant failed to meet the fee-basis requirement of the learned professional exemption for certain type of visits or tasks.  As a result, Representative Plaintiff alleges that Defendant denied him and the Class Members overtime compensation in violation of the FLSA and the OMFWSA.  (Draher Decl. ¶ 12; Coffman Decl., ¶ 14).

Defendant vigorously denies that it misclassified Representative Plaintiff and the Class Members and asserts that it did meet the fee-basis requirement of the professional exemption.  In addition, Defendant maintains that the Representative Plaintiff and the Class Members worked very little overtime.  (Draher Decl. ¶ 12; Coffman Decl., ¶ 15).

A few months after the Action was filed, the Parties began discussing early mediation.  The Parties subsequently scheduled a mediation with well-respected mediator Lynn Cohn for June 4, 2021.  (Draher Decl. ¶ 24; Coffman Decl., ¶ 16).

As part of their agreement to mediate, the Parties entered into a tolling agreement and engaged in informal discovery.  (Draher Decl. ¶ 25; Coffman Decl., ¶ 17). Specifically, Defendant produced:

---

[1] In the original Complaint, Representative Plaintiff sought to represent a group of current and former home health employees who worked for Defendant (and some of its related entities) across the country.  After investigation and discussions with Defendant's Counsel, Representative Plaintiff limited the group of employees that he sought to represent in the Amended Complaint to certain home health employees (*e.g*., occupational therapists, speech therapists, physical therapists and registered nurses) who worked in Ohio.

- Wage information for 10% of the randomly selected Class Members;

- Information regarding the randomly selected Class Members' daily work activities;

- Information regarding Defendant's fee-basis structure.

(Draher Decl. ¶ 26; Coffman Decl., ¶ 18).

Defendant also produced 17 declarations regarding the number of hours that the Class Members worked ("Defendant's Declarations").  According to those declarations, the Class Members worked an average of 2-3 hours of overtime per week. (Draher Decl. ¶ 27; Coffman Decl., ¶ 19).

**B.**     **Negotiation of the Settlement.**

Class Counsel retained the services of a PhD Economist to construct a damages model using the data produced by Defendant.  Defendant also constructed its own damages model. (Draher Decl. ¶ 28; Coffman Decl., ¶ 20).

Class Counsel also performed an expected value ("EV") calculation.  Essentially, the EV is calculated by summing the product of the probabilities of winning at each stage of the litigation and the expected outcome of success and the product of the probabilities of losing at each stage and zero. That is, EV = (probability of win X expected damages) + (probability of loss X $0).  The EV was calculated and visualized using the decision tree software TreeAge Pro©.  (Draher Decl. ¶ 29.

After completion and analysis of their respective damages model and Class Counsel's completion of the EV calculation, the Parties engaged in substantial settlement discussions.  Over the course of their discussions, the Parties discussed their respective damages models and vigorously debated their respective legal and factual positions.  (Draher Decl. ¶ 30; Coffman Decl., ¶ 21).

The Parties also discussed the fact that the Class Members included both those designated as "full-time" and "part-time" by Defendant.[2]  The Parties acknowledged during their negotiations that the full-time Class Members worked more hours each week than the part-time Class Members. (Draher Decl. ¶ 31; Coffman Decl., ¶ 22).

Days before the scheduled mediation, the Parties reached an agreement to settle the Action.  The Settlement includes all Class Members who do not opt-out of the Settlement.  (Draher Decl. ¶ 32; Coffman Decl., ¶ 23).

**C.**     **Summary of the Key Settlement Terms.**

The total settlement amount is $1,740,000.00.  The total settlement amount includes: (a) all individual payments to the Class Members who do not opt-out of the Settlement; (b) service awards to Representative Plaintiff and Opt-In Plaintiff Kimberly Payne; (c) Class Counsel's attorneys' fees and litigation expenses; and (d) the cost of settlement administration.  (Draher Decl. ¶ 33; Coffman Decl., ¶ 24).

Upon preliminary approval, the Notice of Class Action Settlement attached as **Exhibit 3** will be distributed to the Class Members providing them with an opportunity to opt out or object to the Settlement.  Class Members will have 60 days to opt-out or object to the Settlement.  (Draher Decl. ¶ 35; Coffman Decl., ¶ 26).

Under the terms of the Settlement, Class Counsel will be paid one-third of the total settlement fund for their attorneys' fees and will be reimbursed for their litigation expenses.  In addition, Representative Plaintiff and Opt-In Plaintiff Kimberly Payne will each be paid a service award in the amount of $10,000.00.  Last, the cost of settlement administration – which is estimated

---

[2] The designation of certain Class Members as "part-time" does not mean that they never worked overtime.  It does mean, however, that they worked less hours than the "full-time" Class Members.

to be $6,000.00 will be paid out of the total settlement amount.  (Draher Decl. ¶¶ 38-39; Coffman Decl., ¶ 29).

All full-time Class Members will receive a gross settlement payment that represents approximately 4 hours of overtime compensation for each week that they worked during the period of February 4, 2019 to June 4, 2021, and approximately 2 hours of overtime compensation for each week that they worked during the period of February 4, 2018 to February 3, 2019.[3]  All part-time Class Members will receive a gross settlement payment that represents approximately 2 hours of overtime compensation for each week that they worked during the period of February 4, 2019 to June 4, 2021, and approximately 1 hour of overtime compensation for each week that they worked during the period of February 4, 2018 to February 3, 2019.[4]  Class Members will receive a minimum payment of $250.00 if their calculated payment does not exceed this amount.  (Draher Decl. ¶¶ 36-37; Coffman Decl., ¶¶ 27-28).

## III.     **PRELIMINARY APPROVAL IS APPROPRIATE IN THIS CASE.**

The Settlement is subject to approval by the Court pursuant to Fed. R. Civ. P. 23.  Courts in the Sixth Circuit use a three-step process for approving class action settlements.  *Bailey v. Verso Corp.*, 2021 U.S. Dist. LEXIS 31807, at * 6-7 (S.D. Ohio Feb. 22, 2021).  The first step requires the court to preliminarily approve the class action settlement.  *Id.*  The second step requires that notice of the class action settlement be issued to the proposed settlement class members.  The third step requires the court to holding a fairness hearing and decide whether to grant final approval of

---

[3] The difference is to account for the fact that under the OMFWSA the look back period is only two years.  And, under the FLSA, a three-year look back only applies upon a finding of willfulness.

[4] The amount of each Class Member's individual payment is contained in Exhibit A to the Class Action Settlement Agreement.

the class action settlement.  *Id.*  Currently, the Parties request that the Court preliminarily approve the Settlement under step one.

At step one, the Court must ensure that the proposed settlement class outlined in the Settlement satisfies the certification requirements of Rule 23(a) and (b)(3).[5]  Then, the Court must ensure that the Settlement meets the requirements of Rule 23(e).  Last, the Court must ensure that settlement distributions are fair, reasonable and adequate.  As discussed below, these requirements are met here.

### A.   The Proposed Settlement Class Satisfies the Certification Requirements of Rule 23(a).

In the Settlement, the Parties have agreed to the certification of the proposed settlement class:

> Occupational therapists, physical therapists, speech therapists and registered nurses who worked for Defendant in Ohio and were paid, in part, on a per-visit basis during the period of February 4, 2018 to June 4, 2021.

In total, the proposed settlement class (including Representative Plaintiff) includes 491 individuals.  (Draher Decl. ¶ 34; Coffman Decl., ¶ 25).

Under Rule 23, a class action may be maintained if the following requirements of Rule 23(a) are met:  numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).   All four elements are satisfied here.

### 1.   The numerosity requirement of Rule 23(a)(1) is met.

Rule 23(a)(1)'s numerosity requirement is met if the class is "so numerous that joinder of all members is impracticable."  *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2021)

---

[5] When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any of the three conditions set forth in Rule 23(b). The Parties are requesting that the Court certify the proposed settlement class under Rule 23(b)(3).

(internal quotations omitted).  This requirement is met upon a showing that joinder would be difficult and inconvenient.  *Id.*  Numerosity is easily satisfied here because the proposed settlement class includes 491 individuals.  *See e.g. Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 288 (N.D. Ohio 2007) (generally accepted that class of 40 or more is sufficient to meet the numerosity requirement).

### 2.     The commonality requirement of Rule 23(a)(2) is met.

Commonality under Rule 23(a)(2) "is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation."  *Swigart*, 288 F.R.D. at 183, (*citing DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)).  "The commonality test is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class."  *In re Am. Med. Sys.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (internal quotations and citation omitted).

In this case, the legal issue that links the Class Members – whether they were unlawfully denied overtime compensation as a result of Defendant's alleged misclassification of them as exempt under the learned professional exemption – is undoubtedly "substantially related to the resolution of the litigation."  Accordingly, the commonality requirement is met.

### 3.     The typicality requirement is of Rule 23(a)(3) is met.

The typicality requirement under Rule 23(a)(3) is satisfied when claims of the proposed class representative are typical of the claims of the class.  *Swigart*, 288 F.R.D. at 185 (internal quotations omitted).  Commonality and typicality "are separate and distinct requirements" but "tend to merge" and "are often discussed together."  *Id.* (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).  "A proposed class representative's claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members,

and the claims are based on the same legal theory.'" *Swigart*, 288 F.R.D. at 185 (quoting *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997)). The Sixth Circuit has described the typicality requirement in the following manner: "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

Here, typicality exists because Representative Plaintiff's and the Class Members' claims arise out of Defendant's same course of conduct – it's failure to pay Representative Plaintiff and the Class Members overtime compensation based on its alleged misclassification of them as exempt from overtime under the learned professional exemption.

### 4. The adequacy of representation requirement of Rule 23(a)(4) is met.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This results in a two-pronged inquiry: "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Swigart*, 288 F.R.D. at 185-86 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). In other words, "Rule 23(a)(4) tests the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Swigart*, 288 F.R.D. at 186 (quoting *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977)).

Both prongs of Rule 23(a)(4)'s adequacy requirement are satisfied. First, as explained above, Representative Plaintiff's claims against Defendant are based on the same alleged unlawful policy that affects the Class Members. Representative Plaintiff is seeking the same relief as would the Class Members – unpaid overtime compensation. Thus, Representative Plaintiff's interests are

aligned with those of the Class Members. Moreover, Representative Plaintiff is willing and able to fulfill his duties as the class representative. He has been actively involved in the prosecution of this case and was instrumental in the Parties reaching the Settlement. (Draher Decl. ¶ 38; Coffman Decl., ¶ 29).

Second, Class Counsel is qualified and able to conduct this litigation on behalf of the proposed settlement class. Collectively, Class Counsel has litigated hundreds of wage and hour cases in state and federal courts around the country. (Draher Decl. ¶ 7; Coffman Decl., ¶ 9). Class Counsel has actively and vigorously pursued the claims in this case. Class Counsel has committed, and will continue to commit, the resources necessary to seeing this case to its conclusion.

**B.** **The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(3).**

Rule 23(b)(3) requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Thus, Rule 23(b)(3) contains two requirements: predominance and superiority.

**1.** **The predominance requirement of 23(b)(3) is met.**

The predominance requirement examines "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Put differently, the predominance requirements is about whether class-wide questions are "at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).

In this case, the proposed settlement class satisfies the Rule 23(b)(3) predominance requirement because all of the Class Members share a common set of core, predominant alleged facts and legal issues, including, (a) whether Defendant misclassified the Class Members as

exempt from overtime compensation under the learned professional exemption; (b) whether Defendant can meet the fee-basis requirement of the learned professional exemption; (c) whether Representative Plaintiff and the Class Members worked overtime and how much overtime they worked; and (d) whether Representative Plaintiff and the Class Members were denied overtime compensation as a result of Defendant's alleged misclassification.

### 2.    The superiority requirement of Rule 23(b)(3) is met.

The superiority requirement examines whether a class action is superior to other available methods for the fair and efficient adjudication of the dispute and lists four factors for courts to consider:  (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action.  Fed. R. Civ. P. 23(b)(3).  Each factor weighs in favor of certification.

First, there is no evidence that the proposed settlement class members have any interest in maintaining this litigation in separate actions. Second, the Parties are not aware of other pending litigation against Defendant involving the proposed settlement class members.  Third, the benefits of concentrating the claims in this court through the class action mechanism are evident because Defendant consents to the Court's jurisdiction, and many of Defendant's witnesses are located in this district.  Finally, the manageability factor is automatically satisfied when a case is being certified for settlement purposes.  *See Amchem Prods*., 521 U.S. at 620.

Moreover, efficiency favors concentrating the claims in this Court.   A final resolution of Defendant's liability is also fair because the case deals with policies affecting large numbers of employees.  It avoids competing decisions on the issues and offers finality. There is no device that

11

can resolve these matters as efficiently and fairly as a class action. Finally, no major difficulty is likely to arise in management of the class action. Class certification here promotes consistent results, giving Defendants "the benefit of finality and repose." *Id.* (internal citations omitted). Adjudicating this matter as a class action is the most efficient and fair manner of resolving these claims.

### C.   The Notice of Class Action Settlement Meets the Requirements of Rule 23(e) and Due Process.

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. *Bailey v. White*, 320 Fed. Appx. 364, 2009 WL 928595 (6th Cir. 2009). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).

Reasonable notice to class members is also required by due process. *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 943-44 (10th Cir. 2005) (citing *Mullane,* 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974). Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (emphasis by the court) (citing *DeJulius,* 429 F.3d at 944 (citing *Mullane,* 339 U.S. at 313-14); *In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1110-11 (10th Cir. 2001); *Silber v. Mabon,* 18 F.3d 1449, 1453-54 (9th Cir. 1994))). The issue is not whether all class members received notice, "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Fidel*, 534 F.3d at 514 (quoting *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993)).

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by first-class mail at the addresses shown in the defendant's business records. *Grunin v. International House of Pancakes* (8th Cir. 1975), 513 F.2d 114, 120, *cert. denied* (1975), 423 U.S. 864 (1975) (citing *Eisen*, 417 U.S. at 172-77).

In this case, the Notice of Class Action Settlement will be sent to the Class Members by first-class mail using the addresses shown in Defendant's records.

### D. The Settlement is Fair, Reasonable and Adequate under Rule 23(e).

Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under the seven-factor standard discussed below. *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983)). The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and lend themselves readily to compromise. 4 Newberg On Class Actions § 11.41 (4th ed. 2007) (citing cases). Therefore, when considering the below factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.,* 391 F. Supp. 2d 1142, 1145-46 (M.D. Fla. 2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). *Accord, Sweet v. General Tire & Rubber Co.*, 1982 WL 278, *5 (N.D. Ohio Mar. 17, 1982).

The seven factors used by the Sixth Circuit to evaluate class action settlements are as follows:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3. In considering these factors, the task of the court "is not to decide whether one side is right or even whether one side has the better of these arguments. . . .The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632. As discussed below, each of these factors supports preliminary approval here.

### 1.    No indicia of fraud or collision exists.

There was no fraud or collusion in reaching the Settlement. "Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *White v. Premier Pallet & Recycling, Inc.*, No. 5:18-cv-1460, 2018 U.S. Dist. LEXIS 174414, at *4 (N.D. Ohio Oct. 10, 2018) (citation omitted). All settlement negotiations were extensive, conducted fairly, and at arm's-length, and only occurred after the exchange and rigorous analysis of the relevant case law and pay data. (Draher Decl. ¶¶ 25-32; Coffman Decl., ¶ 31); *see Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (arm's-length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements). Both Parties' Counsel, who are experienced in wage and hour class and collective actions, support the settlement as fair and reasonable, and all certify that it was reached at arm's-length. (Draher Decl. ¶¶ 40-41; Coffman Decl., ¶ 31).

### 2.    The complexity, expense and likely duration of continued litigation favor approval.

The policy favoring the settlement of class actions and other complex cases applies with particular force here. Wage and hour class and collective actions are expensive and time-consuming. *See, Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *8 (S.D. Ohio Aug. 17, 2018) ("[m]ost class actions are inherently complex and

settlement avoids the costs, delays, and multitude of other problems associated with them")
(citations omitted); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 U.S. Dist.
LEXIS 204371, at *10, 2019 WL 6310376 (S.D. Ohio Nov. 25, 2019) (Rice, J.); *see also Satterly
v. Airstream, Inc*., No. 3:19-cv-32, 2020 U.S. Dist. LEXIS 210868, at *15, 2020 WL 6536342
(S.D. Ohio Sep. 25, 2020) ("From the outset, the Court notes that wage and hour class and
collective actions, such as this one, are inherently complex and settlement avoids the costs, delays,
and multitude of other problems associated with them.").

If forced to litigate this case further, the Parties would certainly engage in complex, costly
and protracted litigation. The Settlement, on the other hand, provides substantial relief to
Representative Plaintiff and the Class Members promptly and efficiently, and amplifies the
benefits of that relief through the economies of class resolution. (Draher Decl. ¶¶ 42-44; Coffman
Decl., ¶ 35).

### 3. Investigation was sufficient to allow the Parties to act intelligently.

To confirm that the Representative Plaintiff and the Class Members "have had access to
sufficient information to evaluate their case and to assess the adequacy of the proposed
Settlement," the Court must consider the amount of discovery engaged in by the parties. *In re
Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006) (Watson, J.); *Satterly*, 2020
U.S. Dist. LEXIS 210868 at *15–16. "In considering whether there has been sufficient discovery
to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the
court should take account not only of court-refereed discovery but also informal discovery in
which parties engaged both before and after litigation commenced." *Satterly,* 2020 U.S. Dist.
LEXIS 210868 at *16 (internal citations omitted). In this consideration, "the absence of formal
discovery is not unusual or problematic, so long as the parties and the court have adequate

information in order to evaluate the relative positions of the parties." *Id.* (internal citations omitted)*; Mitchell v. Indep. Home Care, Inc.,* No. 2:17-cv-717, 2019 U.S. Dist. LEXIS 26464, at *10–11, 2019 WL 696941 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.) (internal citations omitted), *report and recommendation adopted*, No. 2:17-cv-717 2019 U.S. Dist. LEXIS 39104 (S.D. Ohio Mar. 12, 2019) (Watson, J.); *see also Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *8, 2018 WL 4776977 (S.D. Ohio Oct. 3, 2018) (stating that while the parties had not reached conducting depositions, that "in a wage and hour case based primarily on payroll records, this is sufficient for the parties to properly evaluate their risks and fairly settle the claims").

The Parties engaged in substantial investigation prior to negotiating the Settlement Agreement. Defendant produced the payroll and other wage data required for the Parties to construct a proper damages model and perform an appropriate EV calculation. In addition, the legal issues in this case were thoroughly researched and debated by the Parties. (Draher Decl. ¶¶ 25-32; Coffman Decl., ¶ 21).

### 4. The risks of litigation and uncertainty of recovery favor approval.

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that litigation of these types of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raised affirmative defenses to the claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all.

The possible recovery is also open to dispute. Even if Representative Plaintiff proves liability, the amount of recovery is uncertain and something upon which the Parties continue to disagree. (Draher Decl. ¶ 42; Coffman Decl., ¶ 33).

### 5. Experienced counsel's views favor approval.

The recommendation of Class Counsel, skilled in class actions, that the Court should approve the Settlement is entitled to deference. *Satterly*, 2020 U.S. Dist. LEXIS 210868, at \*19–20; *see also Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs. . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."); *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at \*23, 2012 WL 1945144 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

The Parties' Counsel are experienced in wage-and-hour class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement Agreement. Counsel support the Settlement Agreement as fair and reasonable, and in the best interest of the Class as a whole. (Draher Decl. ¶¶ 7-9, 40-41; Coffman Decl., ¶¶ 9, 11, 31-32).

**6.    The reaction of absent class members cannot be assessed until after notice issues.**

There has not yet been an opportunity to gauge the reaction of absent Class Members as class notice has not yet been issued. The Parties are of the opinion that this factor will likely favor approval because none of the Parties, their Counsel, nor any person on their behalf, shall seek to solicit or otherwise encourage anyone to object to the settlement, or appeal from any order of the Court that is consistent with the terms of this settlement, or discourage participation in the settlement claims process. Class Counsel, however, may advise Class Members how to assert their right to object. However, this issue can be reexamined in the motion for final approval and certification.

**7.    The public interest favors settlement.**

Approval of a fair and reasonable settlement agreement promotes the public's interest in encouraging settlement of litigation. *Satterly*, 2020 U.S. Dist. LEXIS 210868, at *21; *Edwards v. City of Mansfield*, No. 1:15-CV-959, 2016 U.S. Dist. LEXIS 64159, *10 (N.D. Ohio May 16, 2016); *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *30–31 (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1353. Indeed, the "[t]ouchstone for final approval is the effect on the class <u>as a whole</u> in light of the particular circumstances, which include the public policy encouraging comprehensive settlement of class actions and multi-party litigation." *In re Rio Hair Naturalizer Prods. Liab. Litig.*, MDL No. 1055, 1996 U.S. Dist. LEXIS 20440, at *35 (E.D. Mich., Dec. 20, 1996) (underlining in original). Accordingly, resolving the present matter through settlement serves the public interest by providing fair and efficient payments to the settlement class members, avoiding the continued expenditure of judicial resources on protracted complex litigation, and eliminating the risks that both parties face through the litigation process.

### E.     The Settlement Distributions Are Fair, Reasonable and Adequate.

As a part of the scrutiny it applies to a wage and hour settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Murton v. Measurecomp, LLC*, No. 1:07CV3127, 2009 U.S. Dist. LEXIS 144222, at *22 (N.D. Ohio Aug. 10, 2009). In the present case, the Settlement provides that the total settlement amount will be distributed as follows: (a) individual payments to the Class Members who do not opt-out of the Settlement; (b) service awards to Representative Plaintiff and Opt-In Plaintiff Kimberly Payne; (c) Class Counsel's attorneys' fees and litigation expenses; and (d) the cost of settlement administration.

As discussed below, all components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable and adequate for Representative Plaintiff and the Class Members.

**1.    The individual payments are reasonable and adequate.**

Each Class Member that does not opt-out of the Settlement will receive an individual payment.  His or her individual payment will be calculated as follows:

- All full-time Class Members will receive a gross settlement payment that represents approximately 4 hours of overtime compensation for each week that they worked during the period of  February 4, 2019 to June 4, 2021, and approximately 2 hours of overtime compensation for each week that they worked during the period of February 4, 2018 to February 3, 2019.

- All part-time Class Members will receive a gross settlement payment that represents approximately 2 hours of overtime compensation for each week that they worked during the period of  February 4, 2019 to June 4, 2021, and approximately 1 hour of overtime compensation for each week that they worked during the period of February 4, 2018 to February 3, 2019.

- Class Members will receive a minimum payment of $250.00.

(Draher Decl. ¶¶ 36-37; Coffman Decl., ¶¶ 27-28).

Class Members are receiving a payment for every single workweek that they were employed by Defendant during the period of February 18, 2018 through June 4, 2021, even though it is unlikely that the Class Members worked more than 40 hours every single workweek due to vacations, sick days and holidays.  In addition, the amount of hours that the Class Members will receive exceeds amount of overtime that the Defendant's declarants testified to working.  (Draher Decl. ¶¶ 27, 36; Coffman Decl., ¶¶ 19, 27).

 In short, if approved by the Court, the Settlement will provide substantial payments to Representative Plaintiff and the Class Members for unpaid overtime compensation. As explained above in in the Declaration of Shannon M. Draher, Class Counsel performed an EV calculation. The EV calculation accounted for the various case events (*e.g.*, class certification, decertification, dispositive motions, trial, etc.), the subjective probability of success at each event, and the probabilities that various damages awards would occur. The Settlement exceeds the expected value

of this case, which further confirms Class Counsel's opinion that the settlement is fair and reasonable and the payments to Representative Plaintiff and the Class Members is not only adequate, but exceptional.

<strong>2.    The service awards are proper and reasonable.</strong>

The Settlement provides for a service award of $10,000 each to Representative Plaintiff and $10,000 to Opt-In Plaintiff Kimberly Payne. Courts routinely approve service awards to in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (N.D. Ohio Mar. 8, 2010).

In this Circuit, service awards are "typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case." *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997). Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374; *see also Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

The proposed service awards set forth in the Agreement are within the range awarded by district courts in this Circuit and in wage and hour actions in other jurisdictions. *See Satterly*, 2020

20

U.S. Dist. LEXIS 210868 at *25–26 (awarding the representative plaintiffs payments in various amounts from $2,500 to $15,000); *Al-Sabur, et al. v. ADS Alliance Data Systems, Inc.*, No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving service awards of $12,500 for a representative plaintiff and $2,500 for an Opt-In Plaintiff); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 U.S. Dist. 11019, at *16–17, 2019 WL 275711 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) ($10,000 service award for each named plaintiff); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 U.S. Dist. LEXIS 204371, at *21–22, 2019 WL 6310376 (S.D. Ohio Nov. 25, 2019) (Rice, J.) ($10,000 service award for each named plaintiff); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 U.S. Dist. LEXIS 179474, at *17, 2018 WL 5023950 (S.D. Ohio Oct. 17, 2018) (Rice, J.) ($10,000 service award for each named plaintiff); *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *20, 2014 WL 3447947(S.D. Ohio July 11, 2014) (approving "modest class representative award" requests of $10,000 to each of the class representatives in FLSA/Rule 23 hybrid action); *In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679, 694 (N.D. Ohio 2015) (awarding $35,000 service awards); *Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-1061, 2013 U.S. Dist. LEXIS 74201, at *20, 2013 WL 2295880 (S.D. Ohio May 25, 2013) (awarding $12,500 service award); *Abadeer v. Tyson*, No. 3:09-cv-00125, Dkt. 420 (M.D. Tenn. Oct. 17, 2014) (approving service awards ranging from $500 to $11,500 for participating plaintiffs); *Bijoux v. Amerigroup N.Y., LLC*, No. 14 Civ. 3891 (PK), 2016 U.S. Dist. LEXIS 68969, at *4 (E.D.N.Y. May 12, 2016) (awarding service payments between $2,000 and $10,000 to participating plaintiffs); *Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*, No. 11-cv-592-wmc, 2013 U.S. Dist. LEXIS 152087, at *4 (W.D. Wis. Oct. 23, 2013) (approving service payments between $5,000 and $15,000 to named and participating plaintiffs in FLSA/Rule 23 hybrid action); *Hyun v. Ippudo USA Holdings*, No. 14-CV-8706 (AJN),

2016 U.S. Dist. LEXIS 39115, at *6, 2016 WL 1222347 (S.D.N.Y. Mar. 24, 2016) (service awards representing 5% of the settlement fund are "well within the range of service awards recently approved" in FLSA cases).

Representative Plaintiff and Opt-In Plaintiff Kimberly Payne spent significant time assisting Class Counsel in their investigation and prosecution of this case.  In addition, Representative Plaintiff attached his named to a publicly filed lawsuit against his former employer. *Osman*, 2018 U.S. Dist. LEXIS 78222, at *5 (citing *Sand v. Greenberg*, 2011 U.S. Dist. LEXIS 155013, at *9, 2011 WL 784602 (S.D.N.Y. Oct. 6, 2011) (approving award in FLSA case because plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting")).  As such, the time and efforts Representative Plaintiff and Opt-In Plaintiff provided supports the requested service awards. ((Draher Decl. ¶ 38; Coffman Decl., ¶ 29).

### 3.    The attorneys' fees and expenses to Class Counsel are proper and reasonable.

After the Court has confirmed that the terms of Settlement are fair to the Class Members, it may review the Agreement as to the provision of attorneys' fees and litigation expenses to Class Counsel. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

22

In this case, the Settlement provides that Class Counsel receive one-third of the total settlement amount as payment for their attorneys' fees.  A one-third fee is "typical for attorney's fees in a common fund" for wage and hour litigation in this District. *Hebert v. Chesapeake Operating, Inc.*, 2019 WL 4574509, at \*4-8 (S.D. Ohio Sept. 20, 2019).  In fact, the "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases." *Id.* at \*4 quoting *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at \*5 (S.D. Ohio July 11, 2014)). This "is a normal fee amount in a wage and hour case."  *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, \*5 (S.D. Ohio Nov. 25, 2019) (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 WL 5023950 at \*4 (N.D. Ohio July 27, 2018)); *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-355, 2021 WL 1966062, \*5-7 (S.D. Ohio May 17, 2021).

"Absent compelling reasons to the contrary," courts apply the percentage method in wage and hour cases, "as it best reflects FLSA's employee-protection objective." *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 WL 687246 at \*5 (S.D. Ohio Feb. 16, 2021). "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class[]." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d 752, 762 (S.D. Ohio 2007). "[W]hile the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead 'rewards counsel for success and penalizes it for failure." *Id.* Thus, the percentage method is preferred. *Arp. v. Hohla & Wyss Enterprises, LLC*, 2020 WL 6498956 at \*6 (S.D. Ohio Nov. 5, 2020); *Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at \*22, 2018 WL 2009681 (S.D. Ohio Apr. 30, 2018) (Black, J.) (internal citations omitted); *Feiertag v. DDP Holdings, LLC*, No. 14-cv-2643, 2016 U.S. Dist. LEXIS 122297, at \*20–21, 2016 WL 4271208 (S.D. Ohio Sep. 9,

2016); *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *16, 2018 WL 4776977 (S.D. Ohio Oct. 3, 2018); *Carr v. Bob Evans Farms*, No. 1:17-CV-1875, 2018 U.S. Dist. LEXIS 228221, at *10-11 (N.D. Ohio July 27, 2018); *see also, Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, at *6 (N.D. Ohio May 4, 2018) ("One-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'") (citation omitted).  This Court has awarded Class Counsel a one-third fee in similar cases.  *See Charles Fravel v. General Mills Operations, LLC*, Case No. 2:20-cv-01094 (S.D. Ohio Oct. 28, 2020); *Baker v. Collins Mobile, LLC*, 2:22-cv-01996 (S.D. Ohio Dec. 16, 2020); *Bailey v. Black Tie Management Company*, 2:19-cv-1677 (S.D. Ohio Aug. 12, 2020); *Mulledy v. American Air Furnace Company*, 2:20-cv-5185 (S.D. Ohio April 13, 2021).

Class Counsel accepted this case on a contingent fee basis and advanced all litigation expenses. (Draher Decl. ¶ 45; Coffman Decl., ¶ 36).  "In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *19 (S.D. Ohio Dec. 3, 2019); *see also, Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *15 (N.D. Ohio Mar. 26, 2019) ("Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless [and] until there was a recovery, and should be compensated for that risk").

Finally, Courts in this district acknowledge that "[w]age-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *16 (N.D. Ohio Mar. 26, 2019).  Given

24

the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of total settlement amount appropriately compensates Class Counsel for their prosecution of this case, and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

The Agreement also provides that Class Counsel will be reimbursed their out-of-pocket expenses. "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *20 (S.D. Ohio Nov. 25, 2019). In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.*

In the prosecution of this case, Class Counsel incurred out-of-pocket expenses in the amount of $6,916.25. (Draher Decl. ¶ 39; Coffman Decl., ¶ 30). Because these expenses are reasonable and were incurred in the prosecution of the claims in this case, the Court should preliminarily award Class Counsel reimbursement of these costs and expenses from the settlement fund. Finally, the Court should preliminarily approve payment from the fund to Analytics Consulting, LLC in the amount of $6,000.00 for settlement administration costs.[6] (Draher Decl. ¶ 46; Coffman Decl., ¶ 36).

---

[6] Analytics Consulting specializes in class action settlements and legal notice campaigns. Class Counsel has worked extensively with Analytics Consulting on class and collective action notice and settlement administration, and Analytics Consulting has been approved as settlement administrator in cases across the country. *See, e.g., Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 U.S. Dist. LEXIS 38641, at *11 (S.D. Ohio Feb. 18, 2021) ("the Court appointed Analytics Consulting, LLC ("Analytics") to serve as the Settlement Administrator, with responsibility to distribute the Notices and carry out the other administrative duties specified by the Settlement Agreement"); *Watson v. Tennant Co.*, No. 2:18-cv-02462 WBS DB, 2020 U.S. Dist. LEXIS 48918, at *21 (E.D. Cal. Mar. 19, 2020)

On the basis of these factors, as well as all of the other factors discussed above, the Court should conclude that the Settlement is fair, reasonable, and adequate, and grant preliminary and approval under Rule 23(e).

## IV.    CONCLUSION

Representative Plaintiff and Defendant respectfully request that the Court enter the Proposed Preliminary Order Approving Class Action Settlement Agreement attached as **Exhibit 3** and:

- Certify the following class under Rule 23:  "Occupational therapists, physical therapists, speech therapists and registered nurses who worked for Defendant in Ohio and were paid, in part, on a per-visit basis during the period of February 4, 2018 to June 4, 2021. (the "Class Members")";

- Preliminarily approve the Settlement pursuant to Fed. R. Civ. P. 23;

- Designate Representative Plaintiff as the Class Representative;

- Preliminarily approve the Service Awards to Representative Plaintiff and Opt-In Plaintiff Kimberly Payne;

- Designate Shannon M. Draher of Nilges Draher LLC and Matthew J.P. Coffman of Coffman Legal, LLC as Class Counsel;

- Preliminarily approve Class Counsel's request for attorneys' fees and litigation expenses; and

- Schedule a Fairness Hearing approximately 120 days after preliminary approval.

Respectfully submitted,

_s/ Shannon M. Draher_                               _s/ John Gerak_
Shannon M. Draher (0074304)
**NILGES DRAHER LLC**
7266 Portage Street, N.W., Suite D

---

("Analytics Consulting, LLC, is appointed as the settlement administrator"); *Surdu v. Madison Glob., LLC*, 2018 U.S. Dist. LEXIS 48356, at *18 (S.D.N.Y. Mar. 23, 2018) ("I confirm Analytics Consulting, Inc. as the claims administrator").

Massillon, OH  44646
Telephone:      (330) 470-4428
Facsimile:      (330) 754-1430
Email: sdraher@ohlaborlaw.com
          hans@ohlaborlaw.com

Matthew J.P. Coffman (0085586)
Adam C. Gedling (0085256)
**COFFMAN LEGAL, LLC**
1550 Old Henderson Rd.
Suite 126
Columbus, OH 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com
          agedling@mcoffmanlegal.com

*Attorneys for Plaintiff*

John Gerak (0075431)
Ellen Toth (0056176)
Andrew S. Haring (0087213)
**OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.**
Key Tower
127 Public Square, Suite 4100
Cleveland, OH 44114
Phone:    (216) 241-6100
Fax:       (216) 357-4733
Email: john.gerak@ogletree.com
          ellen.toth@ogletree.com
          andrew.haring@ogletree.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2021, the foregoing was filed electronically. Notice

of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

/s/ *Matthew J.P. Coffman*
Matthew J.P. Coffman
*Counsel for Plaintiff*

47880116.1

27