**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **TIMOTHY CARR**, on behalf of himself and others similarly situated, | : : : | |
| | : | **CASE NO. 2:20-cv-6292** |
| Plaintiff, | : : | |
| | : | **JUDGE EDMUND A. SARGUS, JR.** |
| v. | : : | |
| | : | **MAGISTRATE JUDGE KIMBERLY A.** |
| **GUARDIAN HEALTHCARE HOLDINGS, INC.**, | : : | **JOLSON** |
| Defendant. | : | |

<u>**ORDER GRANTING THE PARTIES' JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**</u>

The matter before the Court is the Joint Motion for Certification of the Settlement Class and Final Approval of Class Action Settlement ("Joint Motion for Final Approval").[1] For the reasons set forth below, the Court **GRANTS** the Motion.

I.   <u>**Background**</u>

On December 8, 2020, Plaintiff Timothy Carr ("Plaintiff"), on behalf of himself and those similarly situated, filed his Collective and Class Action Complaint, seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111.03 and 4111.08 ("OMFWSA"); and the Ohio Prompt Pay Act ("OPPA"), Ohio Revised Code § 4113.15.[2] Thereafter, Plaintiff filed his First Amended Complaint on July 23, 2021.[3] In addition to Plaintiff, one opt-in plaintiff, Kimberly Payne, elected to join the case ("Opt-In Plaintiff").

---

[1] ECF No. 29.
[2] ECF No. 1, at PAGEID # 1.
[3] ECF No. 17.

Plaintiff's First Amended Complaint alleges that Guardian Healthcare Holdings, Inc. ("Defendant" or "Guardian") misclassified Plaintiff and similarly situated home health employees as exempt from overtime compensation under the learned professional exemption. Specifically, Plaintiff alleges that Guardian failed to meet the fee-basis requirement of the learned professional exemption. The claims are asserted under both the FLSA and Ohio law on behalf of Plaintiff and similarly situated home health employees. Guardian denies these claims.

### A. Misclassification of Home Health Employees

Plaintiff, Opt-In Plaintiff, and other home health employees provide home health care, hospice, and infusion therapy services for Guardian's clients. These healthcare workers include occupational therapists ("OTs"), physical therapists ("PTs"), speech therapists ("STs"), and registered nurses ("RNs"). Plaintiff herein specifically contends that Defendant failed to meet the fee-basis requirement of the learned professional exemption and thus failed to pay overtime to its OTs, PTs, STs, and RNs under the FLSA and OMFWSA.

For the learned professional exemption to apply to Plaintiff and similarly situated home health employees, three requirements must be met. Specifically, learned professionals will consist of any employee:

> (1) Compensated on a salary or fee basis pursuant to § 541.600 at a rate not less than $684 per week . . . exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.[4]

---

[4] 29 C.F.R. § 541.200.

The only issue Plaintiff argues existed in the present matter is the first requirement, also known as the "fee-basis" requirement. The Code of Federal Regulations makes clear that to qualify as a fee basis, the employee must be "paid an agreed sum for a single job regardless of the time required for its completion."[5] "A compensation plan does not satisfy the fee basis test if it contains *any* component that ties compensation to the number of hours worked."[6]

In this case, Plaintiff alleges that, across the class, the damages for this misclassification of OTs, PTs, STs, and RNs amount to approximately $1,740,000 during the relevant time period. Defendant maintains that it did meet the fee-basis requirement for classifying these employees as properly exempt from overtime compensation.

The parties reached a settlement early into litigation proceedings upon stated terms and conditions, which are set forth in the Settlement Agreement that resolves all claims that were or could have been asserted in the lawsuit.[7] Based on their extensive investigation, Plaintiff's counsel ("Class Counsel") is of the opinion that the terms set forth in the Settlement Agreement are fair, reasonable, adequate, and in the best interests of the class in light of the risk of significant delay, costs, and uncertainty associated with litigation, including Defendant's defense(s).[8]

## II.  The Settlement Agreement

The Settlement Agreement provides that Defendant, without conceding the validity of Plaintiff's claims and without admitting liability, will create a total settlement fund of

---

[5] 29 C.F.R. § 541.605.
[6] *Hicks v. Great Lakes Home Health Servs., Inc.,* No. 17-CV-12674, 2018 WL 2363959, at *5 (E.D. Mich. May 24, 2018) (emphasis in original) (internal quotation marks omitted) (quoting *Elwell v. Univ. Hospitals Home Care Svcs.,* 276 F.3d 832, 838 (6th Cir. 2002)).
[7] ECF Nos. 25-1.
[8] Declarations of Shannon Draher and Matthew J.P. Coffman, ECF No. 25-2.

$1,740,000.00 ("Settlement Fund") to resolve this lawsuit.[9] The parties agree that a settlement class should be certified as a Federal Rule of Civil Procedure 23 class, defined as follows:

> Occupational therapists, physical therapists, speech therapists, and registered nurses who worked for Defendant in Ohio and were paid, in part, on a per-visit basis during the period of February 4, 2018 to June 4, 2021 (the "Class Members").[10]

The Settlement Fund will provide the Class Members with their pro rata share of damages resulting from Plaintiff's claims, including payments for both full-time and part-time home health employees, which reflects the number of workweeks that each Class Member worked.[11] The pro rata share is first impacted by whether the home health employee was full-time or part-time. Full-time employees will receive a gross settlement payment that represents approximately 4 hours of overtime compensation for each week that they worked during period of February 4, 2019 to June 4, 2021 and approximately 2 hours of overtime compensation for each week that they worked during the period of February 4, 2018 to February 3, 2019.[12] Part-time employees will receive a gross settlement payment representing approximately 2 hours of overtime compensation for each week that they worked during the period of February 4, 2019 to June 4, 2021 and approximately 1 hour of overtime compensation for each week that they worked during the period of February 4, 2018 to February 3, 2019.[13] Although the precise amount of damages each Class Member will receive varies, a minimum payment of $250.00 will be issued to Class Members whose damages do not exceed this amount.[14]

---

[9] Settlement Agreement, ECF No. 25-1; Declaration of Shannon M. Draher (hereinafter "Draher Decl."), ECF No. 25-2, ¶ 33; Declaration of Matthew J.P. Coffman (hereinafter "Coffman Decl."), ECF No. 25-2, ¶ 24.
[10] Settlement Agreement, ECF No. 25-1, at PAGEID # 209; Draher Decl., ECF No. 25-2, ¶ 33; *see* Coffman Decl., ECF No. 25-2, ¶ 13.
[11] Draher Decl., ECF No. 25-2, ¶ 34; Coffman Decl., ECF No. 25-2, ¶ 25.
[12] Settlement Agreement, ECF No. 25-1, at PAGEID # 210.
[13] *Id.*
[14] *Id.*; Draher Decl., ECF No. 25-2, ¶ 37; Coffman Decl., ECF No. 25-2, ¶ 28.

The Settlement Fund also provides for the following distributions: attorneys' fees, costs and expenses, and service awards in the amounts of $10,000 each to Plaintiff and Opt-In Plaintiff.[15] These amounts will first be deducted and then the residual amount will be distributed amongst the Class Members on a pro rata basis determined by whether they were full-time or part-time employees and the number of weeks they worked during the relevant time periods.[16]

In exchange for their payments, Plaintiff, Opt-In Plaintiff, and the Class Members will release their wage and hour claims asserted in this lawsuit and be mailed their proportionate share of the Settlement Fund by the settlement administrator ("Settlement Administrator").[17] Class Members will have 180 days after the issuance of their respective settlement payments to cash their checks.[18] Any settlement payments that become null and void after this time will then collectively be treated as a *cy pres* award to be paid to Community Legal Aid Services, Inc.[19]

## III.  Relevant Procedure Background Following Preliminary Approval

On September 9, 2021, this Court preliminarily approved the proposed Rule 23 settlement in this matter.[20] In doing so, the Court preliminarily (1) approved of and incorporated by reference all definitions set forth in the Settlement Agreement as fair, reasonable, and adequate under 29 U.S.C. § 216(b) and Rule 23(e); (2) granted certification pursuant to Rule 23(a) and (b)(3) of a settlement class consisting of the Class Members, as defined in the terms and conditions of the Settlement Agreement,[21] who worked for Defendant in Ohio as home health employees and worked at any time between February 4, 2018 and June 4, 2021 and who did not opt out of the settlement; (3) appointed Shannon M. Draher of Nilges Draher LLC and Matthew J.P. Coffman of

---

[15] Settlement Agreement, ECF No. 25-1, at PAGEID # 178, 210.
[16] *Id.* at PAGEID # 210; Draher Decl., ECF No. 25-2, ¶ 36; Coffman Decl., ECF No. 25-2, ¶ 27.
[17] Settlement Agreement, ECF No. 25-1, at PAGEID # 184, 87–89.
[18] *Id.* at PAGEID # 211.
[19] *Id.* at PAGEID # 187.
[20] Preliminary Order Approving Class Action Settlement Agreement and Notice, ECF No. 27 ("Preliminary Order").
[21] ECF No. 25-2.

Coffman Legal, LLC as class counsel pursuant to Rule 23(g); (4) appointed Timothy Carr as class representative; (5) approved Analytics Consulting, LLC ("Analytics") as the Settlement Administrator; and (6) approved of the settlement procedure and timeline as set forth in the Preliminary Order.[22]

As indicated in the parties' Joint Motion for Final Approval, no Class Members opted out of or objected to the settlement.[23] Class Counsel worked with Analytics to ensure notice of the settlement was successful.[24]

Through these efforts, the parties achieved a successful Rule 23 settlement, which provided the 490 participating Class Members individual settlement awards based on the settlement allocation formula described in the Joint Motion for Preliminary Approval and the Settlement Agreement.[25] Therefore, as more fully explained below, the Court find that the parties' settlement is fair and reasonable in all requisite respects.

## IV. <u>Analysis</u>

### A. The Factors Support Approval of the Settlement

Before a district court approves a settlement, it must find that the settlement is "fair, reasonable, and adequate." *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-CV-1061, 2013 WL 2295880, at *1 (S.D. Ohio May 24, 2013) (citing *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). A district court looks to seven factors in determining whether a class action settlement is fair, reasonable, and adequate:

> (1) the risk of fraud or collusion;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the amount of discovery engaged in by the parties;
> (4) the likelihood of success on the merits;

---

[22] Preliminary Order, ECF No. 27.
[23] Joint Mot. for Final Approval, ECF No. 29, at PAGEID # 271.
[24] *Id.* at PAGEID # 270.
[25] ECF No. 25.

(5) the opinions of class counsel and class representatives;
(6) the reaction of absent class members; and
(7) the public interest.

*Id.* (citing *UAW*, 497 F.3d at 631); *see also Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (citing *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011)) (stating same). In reviewing a proposed class action settlement, the district court has "wide discretion in assessing the weight and applicability" of the relevant factors. *Wright*, 2018 WL 3966253, at *3 (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992.)). As set forth below, the settlement meets the standard for final settlement approval as to each factor and should be approved by the Court.

### 1.      The Notice Process

The Court will consider the notice process used in this case. Since September 9, 2021, the date on which this Court granted the Joint Motion for Preliminary Approval of Class and Collective Action Settlement and Certification of Settlement Class ("Preliminary Approval Motion") in its Preliminary Order,[26] Analytics implemented the notice plan as outlined below.

On or about September 22, 2021, Class Counsel provided a spreadsheet containing Class Members' data, including the names, last known mailing addresses, tax identification numbers, employment data, and settlement payment amounts for 490 Class Members.[27] Analytics subsequently processed the records through the National Change of Address database to standardize and update the mailing addresses.[28]

---

[26] ECF No. 27.
[27] Declaration of Settlement Administrator Jeffrey M. Mitchell (hereinafter "Mitchell Decl."), ECF No. 29-4, ¶ 6.
[28] *Id.* ¶ 7.

On October 7, 2021, Analytics sent the approved "Notice of Class Action Settlement" ("Notice") via First-Class United States Mail to the Class Members, consisting of a total of 490 Class Members, pursuant to the settlement procedure and timeline approved by the Court.[29] During the 60-day notice period,[30] Analytics received 6 notices with forwarding addresses, updating and forwarding those notices, and 20 that were returned as undeliverable, and it searched for new addresses and re-mailed 9 of the notices to the updated addresses.[31]

Pursuant to the Court-approved notice plan, the Class Members had 60 days from the date of mailing to review the terms of the Notice and submit a request to be excluded or object.[32] As of the deadline of December 6, 2021 to request exclusion, Analytics received no requests.[33] In addition, the deadline to object to the settlement was also on December 6, 2021, and Analytics received no objections.[34]

The Court finds that this notice process provided Class Members with an appropriate notice under Rule 23 and met the FLSA's remedial goals. According to Analytics, 479 of the 490 Class Members, or 97.8%, received the notice. This reflects well on the notice process used in this case. Moreover, 100% of the Class Members will be included in the settlement. This factor weighs in favor of approval.

### 2.     The Risk of Fraud or Collusion

Courts presume the absence of fraud or collusion unless there is evidence to the contrary. *Wright*, 2018 WL 3966253, at *3 (quoting *Granada Invs., Inc.*, 962 F.2d at 1205–06). The evidence before the Court clearly reflects that the Settlement Agreement is the product of arms-

---

[29] *Id.* ¶ 8; *see* Preliminary Order, ECF No. 27.
[30] Preliminary Order, ECF No. 27, ¶ 14.
[31] Mitchell Decl., ECF No. 29-4, ¶¶ 9–10.
[32] Preliminary Order, ECF No. 27, ¶ 14.
[33] Mitchell Decl., ECF No. 29-4, ¶ 11.
[34] *Id.*, ¶ 12.

length negotiations conducted by experienced counsel on both sides. As noted in the Preliminary Approval Motion, the parties reached a settlement after an extensive review and computation of damages, informal discovery exchanged between the parties, discussion of the parties' respective damages models, and vigorous debating of the parties' respective legal and factual positions.[35] As such, nothing before the Court suggests that the Settlement Agreement is the result of fraud or collusion. This factor also weighs in favor of approval.

### 3. The Complexity, Expense, and Likely Duration of Continued Litigation

From the outset, the Court notes that wage and hour class and collective actions, such as this one, are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them. *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *3 (S.D. Ohio Nov. 25, 2019); *Wright*, 2018 WL 3966253, at *3; *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). This case was no exception.

This lawsuit involved complex issues of fact, and this factor weighs in favor of approval of the settlement. *Wright*, 2018 WL 3966253, at *3–4; *see Mitchell v. Indep. Home Care, Inc.*, No. 2:17-cv-717, 2019 WL 696941, at *3–4 (S.D. Ohio Feb. 20, 2019), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019).

### 4. The Amount of Discovery Engaged in by the Parties

To confirm that plaintiffs "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the parties. *Wright*, 2018 WL 3966253, at *4 (quoting *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006)). "In considering whether there has been

---

[35] Preliminary Approval Mot., ECF No. 25, at PAGEID # 148; *see also* Draher Decl., ECF No. 25-2, ¶ 30 (stating same); Coffman Decl., ECF No. 25-2, ¶ 21 (stating same).

sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Id*. at *4 (internal citations omitted). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.*; *Mitchell*, 2019 WL 696941, at *4; *see Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977, at *3 (S.D. Ohio Oct. 3, 2018) (stating that while the parties had not yet conducted depositions, "in a wage and hour case based primarily on payroll records, this is sufficient for the parties to properly evaluate their risks and fairly settle the claims").

In this case, the Court finds that the parties engaged in substantial investigation. The parties exchanged written discovery and relevant information, including payroll and other wage data for Defendant in order for the parties to construct a proper damages model and perform an appropriate Expected Value calculation.[36] In addition, the legal issues were thoroughly researched and debated by the parties and thus the value of the claims were properly assessed.[37] As a result, the Court finds that this exchange of information exceeds the level required to inform settlement negotiations by experienced counsel. *Wright*, 2018 WL 3966253, at *4; *see Mitchell*, 2019 WL 696941, at *4.

### 5. The Likelihood of Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Wright*, 2018 WL 3966253, at *4 (quoting *Poplar Creek*, 636 F.3d at 245); *see Mitchell*, 2019 WL 696941, at *4.

---

[36] Joint Mot. for Final Approval, ECF No. 29, at PAGEID # 268.
[37] *See id.*; Draher Decl., ECF No. 25-2, ¶¶ 25–32; Coffman Decl., ECF No. 25-2, ¶ 21.

The Court observes that counsel for both sides believe in the merits of their respective positions and have vigorously represented their clients' interests throughout the litigation but nonetheless recognize that litigation is uncertain in terms of duration, cost, and result. For example, the Settlement Agreement provides relief to the Class Members and eliminates the risks that the parties would otherwise bear if the litigation were to continue on for years, which favors this factor. *See Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *3 (N.D. Ohio Mar. 26, 2019) (citing *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640 (6th Cir. 2013) (affirming bench trial verdict that special investigators were properly classified as exempt from the overtime pay requirements of the FLSA)); *Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012) (affirming a jury verdict, reached after eight years of litigation, that mortgage bankers were properly classified as exempt from the overtime pay requirements of the FLSA).

Absent settlement, the parties would have engaged in significant discovery, including but not limited to responses to discovery requests of many (if not all) of the opt-in plaintiffs, numerous depositions, discovery-related motion practice, further testimony at any additional hearings, and other motion practice (Rule 23 class certification, FLSA collective certification, dispositive motions on the merits and damages issues, etc.). Further, even if Plaintiff prevailed on the merits, any recovery could be significantly curtailed if a jury concludes that Defendant acted in good faith and Plaintiff failed to establish a willful violation of the law.[38] Moreover, an appeal could be filed on one or more issue(s).[39]

On the other hand, Defendant faces the prospect of class-wide liability to 490 current and former home health employees as well as liquidated damages and attorneys' fees following lengthy

---

[38] *See* Joint Mot. for Final Approval, ECF No. 29, at PAGEID # 364; *see* Draher Decl., ECF No. 25-2, ¶ 42; Coffman Decl., ECF No. 25-2, ¶ 33.
[39] *See* Draher Decl., ECF No. 25-2, ¶ 42; Coffman Decl., ECF No. 25-2, ¶ 33.

and expensive litigation.[40] By agreeing to the settlement, these risks are eliminated, and participating Class Members are guaranteed to receive sufficient recovery now rather than possibly receiving a recovery years from now (or not receiving any recovery ever). *See Barnes*, 2019 WL 1614822, at *3; *see also Hall v. U.S. Cargo and Courier Serv., LLC*, No. 2:16-cv-330, 2019 WL 6001198, at *4 (S.D. Ohio Nov. 14, 2019) (denying the defendant's request for costs following a jury trial in an FLSA collective action).

Therefore, the Court finds that these considerations all weigh in favor of approving the settlement.

### 6. The Opinions of Class Counsel and Class Representatives

The recommendation of Class Counsel, skilled in class actions and corporate matters, is that the Court should approve the settlement and defer to Class Counsel's judgment. *Wright*, 2018 WL 3966253 at *4-5; *Mitchell*, 2019 WL 696941, at *5; *see also Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."); *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

In this case, Plaintiff and Opt-In Plaintiff approve of the Settlement Agreement.[41] In addition, Class Counsel is of the opinion that the settlement is a fair, reasonable, and adequate resolution of this litigation.[42] Class Counsel is experienced in wage-and-hour class and collective actions, have acted in good faith, and have represented its clients' best interests in reaching this Settlement.[43] This Court agrees. The Court is familiar with the work of Attorneys Draher and

---

[40] *See* Draher Decl., ECF No. 25-2, ¶ 42; Coffman Decl., ECF No. 25-2, ¶ 33.
[41] Settlement Agreement, ECF No. 25-1, at PAGEID # 192–93.
[42] Draher Decl., ECF No. 25-2, ¶¶ 40–41; Coffman Decl., ECF No. 25-2, ¶¶ 31–32.
[43] Draher Decl., ECF No. 25-2, ¶¶ 7–9, 40–41; Coffman Decl., ECF No. 25-2, ¶¶ 6–11, 31–32.

Coffman and finds that they are both well-versed with wage and hour claims, including class and collective actions. For the reasons set forth above as well as in their declarations already submitted before the Court, the Court finds that this factor weighs in favor of approving the settlement.

### 7. The Reaction of Absent Class Members

The Court must also consider the reaction of the absent class members. *Wright*, 2018 WL 3966253, at *5 (internal citations omitted). As indicated above, the Class Members' reactions strongly support approval. No Class Member requested exclusion from the settlement or objected to the settlement. As noted above, the inclusion rate of 100% is of course sufficient.

### 8. The Public Interest

The public interest favors the settlement of class action litigation. *Wright*, 2018 WL 3966253, at *5; *Mitchell*, 2019 WL 696941, at *5–6; *Kritzer*, 2012 WL 1945144, at *8; *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007). This case is no exception. The settlement provides relief to the Class Members, avoids further litigation in a complex case, and frees the Court of expending further judicial resources. Accordingly, the Court finds that this factor weighs in favor of approving the settlement.

### 9. Overall Settlement Terms

In evaluating the fairness of a class settlement, a court should also ensure that the distribution of settlement proceeds is equitable. *Kritzer*, 2012 WL 1945144, at *8 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). Equity does not dictate that the proceeds must be shared on a pro rata basis so long as the ultimate distribution is fair, reasonable, and adequate. *Id.* (internal citations omitted).

In the present case, this settlement establishes a Settlement Fund that will be divided amongst the Class Members on a pro rata basis based upon their status as full-time or part-time

and the number of weeks worked during the relevant time periods.[44] This pro rata basis ensures an equitable distribution of settlement proceeds that is directly tied to the claims of and harms allegedly suffered by the Class Members and will provide them with a proportionate share of the settlement funds.

### (a) The Individual Payments are Reasonable and Adequate.

With respect to the settlement payments to the Class Members, the Court finds that the individual payments are reasonable. The settlement payments vary, but Class Members will receive a minimum payment of $250.00 if their calculated payments do not exceed that amount.[45] The Settlement Fund and individual settlement payments represent a reasonable and adequate resolution of the Class Members' overtime claims.

### (b) Plaintiff's and Opt-In Plaintiff's Service Awards Are Reasonable

The Sixth Circuit declared that "numerous courts have authorized incentive awards [as] efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003); *accord Wright*, 2018 WL 3966253, at *7 (stating same); *Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) (stating same). Notably, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Wright*, 2018 WL 3966253, at *7 (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (internal quotation marks and citations omitted)). Service awards to representative plaintiffs "are common in class action settlement and routinely approved

---

[44] Settlement Agreement, ECF No. 25-1, at PAGEID # 210; Draher Decl., ECF No. 25-2, ¶ 36; Coffman Decl., ECF No. 25-2, ¶ 27.
[45] Settlement Agreement, ECF No. 25-1, at PAGEID # 210; Draher Decl., ECF No. 25-2, ¶ 37; Coffman Decl., ECF No. 25-2, ¶ 28.

for the simple reason 'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Kritzer*, 2012 WL 1945144, at *8.

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." *In re S. Ohio Correctional Facility*, 175 F.R.D. 270, 273–76 (S.D. Ohio 1997). Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)); *see also Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (stating that among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members"). Such awards are common in class action settlements and routinely approved for this simple reason: "to compensate [plaintiffs] for the services they provided and the risks they incurred during the course of the class action litigation." *Kritzer*, 2012 WL 1945144, at *8–9.

In the present case, the Court finds that Plaintiff's and Opt-In Plaintiff's roles in the litigation were necessary, and the requested payment amounts are reflective of their respective contributions. In addition, Plaintiff attached his name to a publicly filed lawsuit against his former employer. *Osman*, 2018 WL 2095172, at *2 (citing *Sand v. Greenberg*, No. 08 Civ. 7840(PAC), 2011 WL 784602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving the award in an FLSA case because the plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting").

For their individual efforts, Plaintiff and Opt-In Plaintiff each requested service payments in the amount of $10,000. The Court finds that the service payments are reasonable and approves the amounts sought, particularly given their efforts as well as the fact that the proposed service payments set forth in the agreement are within the range awarded by district courts in this Circuit and in wage and hour actions in other jurisdictions. *See Satterly v. Airstream, Inc.*, No. 3:19-cv-32, 2020 WL 6536342, at *8-9 (S.D. Ohio Sept. 25, 2020); *Al-Sabur v. ADS Alliance Data Systems, Inc.*, No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (approving service awards of $12,500 for a representative plaintiff and $2,500 for an Opt-In Plaintiff); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) (approving a $10,000 service award for each named plaintiff); *Brandenburg*, 2019 WL 6310376, at *8 (same); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *6 (S.D. Ohio Oct. 17, 2018) (same).

Therefore, given that all of the factors weigh in favor of approval, the Court **GRANTS** the parties' Joint Motion for Final Approval.

**B.** **Plaintiff's Attorneys' Fees and Reimbursement of Costs Are Reasonable and Appropriate for Final Approval.**

**1.** **Class Counsel Is Entitled to the Requested Fee.**

As this Court has declared, "when awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Wright*, 2018 WL 3966253, at *6 (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)); *Mitchell*, 2019 WL 696941, at *6; *see also Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011) (internal citations omitted) ("[A]bsent adequate compensation, counsel will not be willing to undertake the risk of common fund class action litigation. Counsel who create a common fund for the benefit of

16

a class are entitled to a payment of fees and expenses from the fund relative to the benefit achieved."). Rule 23 authorizes a court to "award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." *See* Fed. R. Civ. P. 23(h).

Class Counsel asks the Court to approve an attorneys' fees award of one-third of the settlement fund, i.e., $580,000.[46] Defendant does not object to the requested fee award. Moreover, no Class Member has objected to this fee. The Court notes that Plaintiff's successful pursuit of this action supports the requested fee award. *Wright*, 2018 WL 3966253, at *6 (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194 (6th Cir. 1974)).

(a)      <em>The Court Adopts the "Percentage of the Fund" Approach.</em>

The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to determine a reasonable attorney's fee from a common fund settlement. *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 WL 4574509, at *4 (S.D. Ohio Sept. 20, 2019) (further citation omitted) (adopting the percentage approach as "the most appropriate method for determining reasonable attorneys' fees" in wage and hour cases); *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, at *5 (S.D. Ohio July 11, 2014) (same); *see also Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 790 (N.D. Ohio 2010) (stating that the percentage-of-the-fund method is the "preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share"). Indeed, "[a]bsent compelling reasons to the contrary," courts apply the percentage method in wage and hour cases, "as it best reflects [the] FLSA's employee-protection objective." *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 WL 687246, at *5 (S.D. Ohio Feb. 16, 2021).

---

[46] Settlement Agreement, ECF No. 25-1, at PAGEID # 212; Draher Decl., ECF No. 25-2, ¶ 39; Coffman Decl., ECF No. 25-2, ¶ 30.

This Court has consistently held that 1/3 of the settlement fund is a normal and reasonable attorneys' fee amount to request in wage and hour cases. *See, e.g.*, *O'Neil v. Miller Pipeline, LLC*, No. 2:20-cv-4034, 2021 WL 5376235, at *2 (S.D. Ohio Nov. 2, 2021) (finding attorneys' fees representing approximately one-third of the total settlement fund as reasonable); *Pierce v. Diversified Health Mgmt., Inc.*, No. 2:21-cv-2624, 2021 WL 4401437, at *2 (S.D. Ohio Sept. 27, 2021) (further citation omitted) (same); *Croskey v. Hogan Servs., Inc.*, No. 2:20-cv-3062, 2021 WL 3012278, at *2 (S.D. Ohio July 15, 2021) (further citation omitted) ("[A]ttorneys' fees . . . represent[ing] one-third of the total settlement amount . . . are reasonable."); *Satterly*, 2020 WL 6536342, at *10 (collecting cases) ("Federal jurisprudence within the Sixth Circuit, including this Court, hold that 1/3 of the settlement fund is a 'normal fee amount in a wage and hour case.'"); *Campbell v. Wise Med. Staffing, Inc.*, No. 2:18-CV-493, 2020 WL 9259704, at *2 (S.D. Ohio Feb. 21, 2020) ("The Court . . . finds that one-third of the Settlement Fund is a reasonable percentage of the fund to be awarded for attorney's fees."); *Al-Sabur*, No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (approving as reasonable 1/3 of the common fund of $525,000 for attorney fees); *see also Walton v. Oldcastle BuildingEnvelope, Inc.*, No. 3:18-cv-2936, ECF No. 44 (N.D. Ohio Mar. 2, 2020) (approving as reasonable 1/3 of a total common fund of $775,000 for attorney fees).

Here, Class Counsel requests an award of one-third of the settlement fund as a fee award. This fee amount is normal in common fund settlements in wage and hour cases. The Court will not deviate from the norm here. The Court finds that Class Counsel's request for a one-third fee is approved.

(b)     *Reasonableness of Fee Award*

After the Court has confirmed that the terms of the settlement are fair to the Class Members, it may review the Settlement Agreement as to the provision of attorneys' fees and litigation costs/expenses incurred by Class Counsel. In determining the reasonableness of fees, the Court recognizes that "[t]he purpose of the FLSA attorney fees provision is to ensure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). Further, "an award of attorney fees . . . encourages the vindication of congressionally identified policies and rights." *Id.* at 1134–35.

Class Counsel litigated this case on a wholly contingent basis with no guarantee of recovery.[47] "In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 WL 6485159, at *7 (S.D. Ohio Dec. 3, 2019) (further citation omitted); *see also Kritzer*, 2012 WL 1945144, at *9 ("Having taken the case on a contingency fee basis, Plaintiffs' counsel undertook the risk of not being compensated, [which] cuts significantly in favor of awarding them a significant fee recovery here.").

As noted above, this case was also a complex wage and hour class action. "Generally speaking, '[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.'" *Ganci*, 2019 WL 6485159, at *7 (alteration in original) (internal quotation marks and further citation omitted). Moreover, this Court has awarded Class Counsel a one-third fee in similar cases. *See Charles Fravel v. Gen. Mills Operations, LLC*, Case No. 2:20-cv-01094 (S.D. Ohio Oct. 28, 2020); *Baker v. Collins Mobile,*

---

[47] Draher Decl., ECF No. 25-2, ¶ 45; Coffman Decl., ECF No. 25-2, ¶ 36.

*LLC*, 2:22-cv-01996 (S.D. Ohio Dec. 16, 2020); *Bailey v. Black Tie Management Company*, 2:19-cv-1677 (S.D. Ohio Aug. 12, 2020); *Mulledy v. American Air Furnace Company*, 2:20-cv-5185 (S.D. Ohio April 13, 2021); *Morse v. NTI Services, Corp.*, 2:20-cv-2173, 2021 WL 4350485, at *2 (S.D. Ohio Sept. 17, 2021).

Plaintiff and Defendant are represented by experienced counsel. All members of counsel here are highly qualified and have substantial experience in federal litigation and collective/class action litigation. Class Counsel has substantial experience in wage-and-hour litigation. The Court is familiar with the legal counsel provided by Attorneys Draher and Coffman, particularly in wage and hour matters, and this case was no exception.

For these reasons, the Court determines that the fees requested are reasonable and **GRANTS** Class Counsel's request for fees for 1/3 of the common fund, or $580,000 in attorneys' fees.

### 2. Class Counsel Is Entitled to Reimbursement of Costs and Expenses.

Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement. *Brandenburg*, 2019 WL 6310376, at *7. Expense awards are customary when litigants have created a common settlement fund for the benefit of a class. *Id*. (internal citations omitted).

Here, Class Counsel requests $6,916.25 in costs/expenses that have been incurred prosecuting this lawsuit.[48]

The Settlement Agreement also provides that settlement administration costs will be deducted from the common fund. The Settlement Administrator's fees are $6,000.[49]

---

[48] Settlement Agreement, ECF No. 25-1, at PAGEID # 212; Draher Decl., ECF No. 25-2, ¶ 39; Coffman Decl., ECF No. 25-2, ¶ 30.
[49] Draher Decl., ECF No. 25-2, ¶ 46; Coffman Decl., ECF No. 25-2, ¶ 36.

The Court finds these expenses to be reasonable and necessary in connection with litigating and resolving this case. Defendant does not dispute that the fees are reasonable and reimbursable. The Court **GRANTS** Class Counsel's request for expense reimbursement of $6,916.25 and administration costs up to $6,000.

### 3. Class Representative Contribution Awards

Plaintiff and Opt-In Plaintiff each request a service award of $10,000, which Defendant does not oppose. At the outset, the Court notes that a service award of $10,000 has been approved in nearly identical cases. *See Estate of McConnell*, 2021 WL 1966062, at *8; *Arp v. Hohla & Wyss Enters., LLC*, No. 3:18-cv-119, 2020 WL 6498956, at *8–9 (S.D. Ohio Nov. 5, 2020); *Brandenburg*, 2019 WL 6310376, at *8; *Mullins*, 2019 WL 275711, at *6; *Arledge*, 2018 WL 5023950, at *6.

The Supreme Court recently recognized that a class representative "might receive a share of class recovery above and beyond her individual claim." *China Agritech, Inc. v. Resh*, —— U.S. ——, 138 S. Ct. 1800, 1811, n.7, 201 L.Ed.2d 123 (2018). "It is important to compensate the work and additional risk that a class representative takes on, particularly in a wage and hour lawsuit." *Estate of McConnell*, 2021 WL 1966062, at *8.

The Court finds that only through Mr. Carr's and Ms. Payne's efforts did a large group of low-wage workers receive a substantial award. The Court finds that it is appropriate to reward wage and hour plaintiffs who obtain tangible benefits for their fellow workers.

Accordingly, the Court **GRANTS** Plaintiff's and Opt-In Plaintiff's requests each for a service award of $10,000.

### V. Conclusion

Based on the foregoing, the parties' Joint Motion for Final Approval is **GRANTED**.

Accordingly, the Court finds as follows:

1.  Pursuant to Federal Rule of Civil Procedure 23(e)(2), the Court finds after a hearing and based on the parties' submissions, the settlement agreement is fair, reasonable, and adequate. In reaching this conclusion, the Court considered the record in its entirety and heard the arguments of counsel for the parties. In addition, the Court has considered a number of factors, including: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the Class Members to the settlement agreement; (3) the stage of proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of maintaining the class action through the trial; and (6) the reasonableness of monetary benefits to the Class Members;

2.  The terms and provisions of the Settlement Agreement are the product of thorough, arms-length negotiations among experienced and competent counsel. Approval of the Settlement Agreement will result in substantial savings of time, money, and effort to the Court and the parties and will further the interests of justice;

3.  All Class Members are bound by this Judgment and by the terms of the Settlement Agreement;

4.  Nothing in the Settlement Agreement, this Judgment, or the fact of the settlement constitutes any admission by any of the parties of any liability, wrongdoing, or violation of law, damages or lack thereof, or of the validity or invalidity of any claim or defense asserted in the Action;

5.  The Court has considered the submissions by the parties and all other relevant factors, including the results achieved and the efforts of Class Counsel in prosecuting the claims on behalf of the Class Members. Plaintiff participated in the Action, acted to protect the Class Members, and assisted his counsel. The efforts of Class Counsel have produced the Settlement Agreement entered into with good faith, providing a fair, reasonable, adequate, and certain result for the Class Members. Class Counsel have made application for an award of $580,000 in attorneys' fees, $6,916.25 in expenses incurred in the prosecution of the Action on behalf of themselves and the Class Members. The combined total of the award is $586,916.25, which the Court finds to be fair, reasonable, and adequate under the circumstances. The Court hereby awards $586,916.25 as attorneys' fees and expenses. Analytics shall also be paid $6,000 for its services in administering this settlement. Further, Plaintiff and Opt-In Plaintiff are each entitled to a fair, reasonable, and justified service award of $10,000 pursuant to the Settlement Agreement and to be paid by Defendant from the Settlement Fund;

6.  The parties shall notify the Court once the final settlement payment is made, at which time the Court will dismiss the Action with prejudice as well as all Released Claims against each and all Released Persons and without costs to any of the parties

as against the others except as otherwise agreed;

7.      Without affecting the finality of this Judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this Judgment and the Settlement Agreement and all matters ancillary thereto.


**1/19/2022**                                      **s/Edmund A. Sargus, Jr.**
**DATE**                                          **EDMUND A. SARGUS, JR.**
                                                  **UNITED STATES DISTRICT JUDGE**